**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

STX, L.L.C.,                                          **:**

                                             **:**

      v.                                                **:**

                                             **:**     Civil Action No. CCB-05-1986

BRINE, INC., and WARRIOR                **:**

LACROSSE, INC.                                    **:**

                       ...o0o...

**MEMORANDUM**

Now pending before the court is a motion for partial summary judgment filed by plaintiff
STX, L.L.C. ("STX") against Warrior Lacrosse, Inc. ("Warrior").  STX claims Warrior
appropriated the point of novelty of STX's United States Design Patent No. D496,083 (the "'083
patent"), which granted STX the rights to an invention titled "Lacrosse Head Sidewall
Silhouette."  In response, Warrior counter-moved for summary judgment, arguing it did not
infringe the '083 patent.  The issues in this case have been fully briefed and a hearing was held
July 25, 2007.  For the reasons stated below, both the plaintiff's and the defendant's motion will
be denied.

**BACKGROUND**

This case involves the possible infringement of a lacrosse head design patent.  Lacrosse
heads have an open frame that generally includes a throat for attachment to the handle, a guard
stop, a pair of opposing sidewalls, and a scoop portion where the player catches the ball.  As
mandated by the rules of the National Collegiate Athletic Association (NCAA), lacrosse sticks
must meet certain specifications.  The NCAA mandates that the width of the head "at its widest
point shall measure between 6 ½ and 10 inches, inside measurement at its widest point, at the
front of the side wall" and that the "guard stop at the throat of the cross must be a minimum of

-1-

10 inches from the outside edge of the head to the farthest unexposed edge of the stop." (Pl.'s

Mem. at Ex. 4, Emala Aff. at ¶¶ 10-11.)

Design patents have been granted to lacrosse head manufacturers since 1975, though

until recently none had been granted for a front and back silhouette only.  Over the past thirty

years, lacrosse heads have evolved as lacrosse players sought both a wide catching area (the

scoop of the head) and a relatively small ball retention area (the base of the head).  Accordingly,

lacrosse stick manufacturers began creating lacrosse heads whose walls were wide at their heads

but tapered until the guard stop.  In 1999, Warrior introduced the "Revolution", a lacrosse head

which it described as having "pinched sidewalls." Warrior followed in 2000 with another head

with "pinched sidewalls" called the "Evolution."  (*See* Def.'s Opp. Mem. at Ex. C, Ex. D.)  In

2001, Warrior introduced the "Blade", which included sidewall lower rims that were pinched

even further together than the Evolution and Revolution; in Warrior's words, the Blade

silhouette includes "(i) abrupt concave curve portions, (ii) convex curve portions, and (iii) a pair

of parallel straight portions in the rear portion of that head."  (*See* Def.'s Opp. Mem. at 5 and Ex.

E, F.)

STX claims that in 2001 Dale Kohler, an employee of STX, created a "completely new

design for a lacrosse head." (Pl.'s Mem. at 14.)  Kohler testified that he created a "keyholed",

"cool-looking" new lacrosse head that would be different from anything else on the market.  The

shape was embodied in a lacrosse stick named the "Bionic."  (Pl.'s Mem. at Ex. 6, Kohler Dep.

at 66.)  Believing Kohler's idea was novel, STX attempted to patent the shape of the head.

STX's attorneys first considered seeking a utility patent, but STX's general counsel David Emala

testified that STX believed prior art might preclude patenting a functional aspect of the Bionic

head.  (Pl.'s Mem. at Ex. 4, Emala Aff. at ¶ 13.)  STX then sought a design patent for the head,

concluding that "there was no prior art - and certainly not the heads that Warrior has referenced

[the Evolution and the Blade]- even close to the novel silhouette shape of the new head shape,

eventually sold under the model name 'Bionic.'" (Pl.'s Mem. at 17.)

        STX submitted its application for the patent to the United States Patent and Trademark

Office (USPTO) on March 1, 2002, including front and rear silhouettes of the lacrosse head.

(Pl.'s Mem. at Ex. 1.)  STX's patent claim read simply: "The ornamental design for a lacrosse

head sidewall silhouette, as shown", and STX bolded approximately the top 2/3 of the head,

indicating that was the section it was attempting to patent. (*Id.*)  STX did not submit a written

description of the shape and did not present a side view of the head.  In its patent application,

STX revealed five patents it considered prior art; it did not, however, reveal either Warrior's

Evolution or Blade to the patent examiner.  STX's patent application was approved under patent

number US D496,083.

        In August 2004, Warrior introduced the two lacrosse sticks - the Evo Pro and the Revo

Pro - that STX now claims infringe on its '083 patent.  The Evo Pro and Revo Pro are

modifications of Warrior's earlier lacrosse sticks, the Evolution and Revolution.  As documented

in the plaintiff's motion, the sidewalls of the Evo Pro and Revo Pro differ from their

predecessors by .05 to .8 inches.  (*See* Pl.'s Mem. at 30.)  Dr. Edward Magrab, STX's expert,

examined the Evo Pro and Revo Pro and the '083 patent and opined:

> The silhouette in the '083 patent is composed of curves whose curvature changes rapidly
> in creating the transition from the head's widest points to its narrowest points.  When
> comparing the Evo Pro and Revo Pro to the '083 patent, as shown in Figures (1) and (2)
> below (and also in Exhibit 8 in my deposition and in Exhibits 3 and 4 of my expert
> report), we see that each silhouette employs a transition curve that very closely mimics
> the STX silhouette; that is, a curved line whose curvature is continually and rapidly

changing as it progresses from the widest locations to the narrowest locations.

(*Id.* at Ex. 9, Magrab Aff. at ¶ 9.)  Dr. Magrab compared the silhouettes against each other in his

affidavit by computer analysis.  (*Id.*)  Dr. Magrab further stated that none of the prior art "have

shapes that are similar to the figures in the '083 patent."  (*Id.* at ¶ 10.)

In July 2005, STX filed a complaint (amended in August 2005) against Warrior, claiming

that Warrior's Finalizer, Evo Pro, and Revo Pro heads infringed the '083 patent.[1]  After

discovery was completed, STX filed a motion for partial summary judgment as to Warrior's

appropriation of the '083 design patent point of novelty.  In response, Warrior filed several

opposing motions for summary judgment arguing: 1) STX is barred from seeking pre-suit

damages for failing to comply with 35 U.S.C. § 287; 2) STX's patent is invalid on grounds of

functionality; 3) STX's patent is invalid under 35 U.S.C. § 112; and 4) Warrior did not infringe

STX's patent.  At the motions hearing, I granted in part and denied in part Warrior's motion

relating to pre-suit damages and denied Warrior's motion relating to functionality.[2]  This opinion

focuses on the point of novelty and infringement issues; the 35 U.S.C. § 112 issues will be

discussed separately.

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment:
shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show that there is no genuine issue

---

[1] STX has since dropped the allegation that the Finalizer infringes the patent.

[2] In its answer, Warrior also had included a counterclaim alleging that STX infringed one of Warrior's lacrosse head patents (U.S. Patent No. 6,902,501).  At the motions hearing, the parties agreed to settle that claim, and Warrior voluntarily dismissed the counterclaim relating to that patent.

as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Determining whether a design patent is infringed is a two-step process, requiring the court to (1) ascertain the construction of the patent claim, and (2) compare the construed claim to the accused product. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995).  "In assessing infringement, the patented and accused designs do not have to be identical in order for

design patent infringement to be found." *Contessa Food Products, Inc. v. Conagra, Inc.*, 282

F.3d 1370, 1376 (citing *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed.

Cir.1992)).  Instead, what controls is the appearance of the design as a whole in comparison to

the accused product.  *Id.* (citing *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405

(Fed. Cir. 1997).  In general, however, design patents are narrowly construed and "are entitled to

almost no scope beyond the precise content of the patent drawings." *Brooks Furniture Mfg., Inc.*

*v. Dutailier Intern., Inc.*, 393 F.3d 1378, 1383 (Fed. Cir. 2005); *see also Elmer v. ICC*

*Fabricating, Inc.*, 67 F.3d at 1577.

Claim Construction

Matters of claim construction are questions of law, not fact.  *Markman v. Westview*

*Instruments, Inc.*, 517 U.S. 370, 391, 116 S.Ct. 1384 (1996); *Cybor Corp. v. FAS Techs., Inc.*,

138 F.3d 1448, 1455-56 (Fed. Cir. 1998) (en banc).  The court must resolve them by reference,

first and foremost, to the claims, the specifications, and the patent's prosecution history.  *Frank's*

*Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1374 (Fed. Cir. 2002).

Extrinsic evidence also may be considered if the intrinsic evidence does not clearly define the

meaning or scope of the claim term.  *Id.*   To quote the "well-established axiom in patent law,"

"a patentee is free to be his or her own lexicographer," assigning whatever meaning he or she

likes to the terms in the claims.  *Hormone Research Found., Inc. v. Genentech, Inc.,* 904 F.2d

1558, 1563 (Fed. Cir. 1990); see also *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369

(Fed. Cir. 2003).  Absent, however, clear indication that the patent employs terms in an

idiosyncratic fashion, "words in a claim will be given their ordinary and accustomed meaning."

*Frank's Casing*, 292 F.3d at 1374.

Here, STX's patent claim read simply: "the ornamental design for a lacrosse head sidewall silhouette, as shown."  (Pl.'s Mem. at Ex. 1.)  STX contends that the patent, properly construed, encompasses the solid lines "that mark the outer limits of the approximately top two thirds of the lacrosse head shape" depicted in the '083 patent application.  (Pl.'s Mem. at 28.)  In response, Warrior argues that the courts require a verbal construction of the particular design features of the patent claim and offers its own construction for the '083 Patent:

> An outline created by the upper two-thirds of a lacrosse head which includes 1) a flattened, broad scoop portion, 2) on each sidewall, a transition portion which comprises, from the widest point of the head towards the base when viewed from the centerline of the head, an abrupt concave curve followed by an abrupt convex curve of substantially equal length and radius of curvature, 3) followed by parallel lines in the ball retention area of the head.

(Def.'s Reply at 3-4.)

Ordinarily no description of the invention is required in a design patent other than a reference to the drawing, *see Goodyear Tire & Rubber Co., Inc. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1116 (Fed. Cir. 1998); 37 C.F.R. § 1.153(a).   In explaining the basis for a decision in a design patent case, however, it is helpful for the court to "first translate these visual descriptions into words - i.e. into a medium of communication."  *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996).  This verbal description should evoke the visual image of the design.  *Id.* at 103 n.2.  This principle was illustrated in *Contessa*, where the design patent concerned shrimp serving trays.  The district court in *Contessa* verbally described each of the figures listed in the patent and then ultimately construed the claim: "[i]n sum, patent '612 claims a tray of certain design, as shown in Figures 4-5, containing shrimp arranged in a particular fashion, as shown in Figures 1-3."  *ZB Indus., Inc. v. Conagra, Inc.*, 2000 WL 1863561 at *2 (C.D. Cal. 2000) (unpublished).  The Federal Circuit approved the district court's claim

construction, noting that the district court considered and described each of the Figures in the

patent and properly construed the claim to be its "overall ornamental visual impression, rather

than . . . the broader general design concept." *Contessa*, 282 F.3d at 1377 (citing *OddzOn*, 122

F.3d at 1405).

Following *Durling* and *Contessa*, it appears that claim construction in a design patent

case is best done by providing a verbalization of the claim but, ultimately, by reference to the

figures.  Here, STX's patent includes two drawings, which show a front and rear view of a key-

hole shaped silhouette of a lacrosse head.  (Pl.'s Mem. at Ex. 1.)  The Figures reveal a silhouette

with a relatively flat and broad scoop, a partial S-shaped curve in the ball transition area, and the

beginning of a ball retention area with parallel walls.  The S-shaped curve consists of a concave

curve that continues until about the middle of the full lacrosse head and then gradually curves in

a convex shape until the beginning of the ball retention area.  While this verbal description

amplifies the claim construction in this case, in sum, patent '083 claims a front and back

silhouette of a lacrosse stick head, as shown in Figures 1 and 2 of the patent.

Comparison to the Accused Device

In comparing the construed claim to the accused product, a court must apply "two

distinct tests, both of which must be satisfied in order to find infringement: a) the ordinary

observer test, and b) the point of novelty test." *Contessa*, 282 F.3d at 1377.  Infringement of a

design patent is typically a question of fact for the jury.  *Braun Inc. v. Dynamics Corp. of

America*, 975 F.2d 815, 819 (Fed. Cir. 1992).  Here, STX has moved for summary judgment

solely on the appropriation of point of novelty prong.  In its motion, Warrior argues it has not

infringed the patent under either the ordinary observer test or the point of novelty test.

Accordingly, I will address both tests.

*Ordinary Observer Test*

The ordinary observer test states: "[If] in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) (citing *Gorham Co. v. White*, 14 Wall. 511, 81 U.S. 511, 528 (1871)).  The relevant observer is a person of reasonable intelligence who is an ordinary purchaser of the actual accused product.  *Goodyear Tire & Rubber Co., Inc. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1117 (Fed. Cir. 1998).

Here, Warrior has moved for summary judgment under the ordinary observer test.  Based on the record, however, the designs of the Evo Pro and Revo Pro are too similar to the '083 patent silhouette to conclude as a matter of law that an ordinary observer would not be deceived. In its opposition to Warrior's motion, STX has provided the expert report of Gary Gait, a professional lacrosse player also involved in the design and product development of lacrosse equipment.  Gait opined that "ordinary observers of lacrosse sticks and heads, giving such attention as a purchaser usually gives, would believe that the STX '083 patented design on the one hand, and the corresponding silhouette of the Warrior Evo Pro and Revo Pro designs on the other, are substantially the same."  (Pl.'s Mem. at Ex. 4, Emala Aff. at Ex. R, Gait Rep. at 3-4.) STX also relies on Dr. Magrab, a professor of mechanical engineering, who overlay the accused heads on the '083 patented design.  These drawings show substantial similarity between the '083

-9-

silhouette and the Evo Pro and Revo Pro silhouettes.  Although Warrior does attack the weight

of the evidence provided by STX, other than the figures it submits in its brief it has not provided

substantial evidence of its own (e.g. customer surveys, expert reports) on the ordinary observer

prong.[3]

      Although the Warrior products are  not identical to the '083 silhouette, "the patented and

accused designs do not have to be identical in order for design patent infringement to be found."

*Contessa*, 282 F.3d at 1376.   Given STX's production of evidence, a reasonable fact-finder

could find that an ordinary observer would be deceived.   Accordingly, Warrior's motion for

summary judgment will be denied.

*Point of Novelty Test*

      Under the point of novelty test, the fact finder must consider whether the accused design

appropriates the specific novel features of the patented design which distinguishes it from the

---

[3] In support of its argument, Warrior cites two unpublished district court cases where summary judgment of no infringement was granted.  *Puritan-Bennett Corp. v. Penox Tech. Inc.!*, 2004 WL 866618 (S.D. Ind. 2004); *Minka Lighting, Inc. v. Craftmade Int'l., Inc.*, 2002 WL 1331883 (N.D. Tex. 2002).  Both of those cases are distinguishable.  In *Puritan-Bennett*, the design differences between the two liquid oxygen devices at issue were so substantial to the naked eye that the district court described them as "stark."  *Puritan-Bennett*, 2004 WL 866618, at *24.  The patent-holder presented survey evidence, which purported to demonstrate confusion, but the survey did not properly measure the feelings of the ultimate commercial purchaser of the products.  *Id.* at *26.  In *Minka Lighting*, the court held that "none of [the patented device's] distinctive ornamental features" were found on the accused device.  *Minka Lighting*, 2002 WL 1331883, at *3.  The patent-holder's only evidence that consumers would be confused by the two products was the testimony of one retailer who recounted that one unidentified customer may or may not have thought the two products were either similar or the same.  (*Id.*)
    Here, the differences between the '086 silhouette and the Evo Pro and Revo Pro are not "stark," and STX has produced relevant, admissible expert testimony supporting its claim of confusion.  Warrior's cited cases are thus distinguishable.

prior art. *Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1197 (Fed. Cir. 1995).

The Federal Circuit recently stated that while "a combination of design elements itself may

constitute a 'point of novelty' . . . [s]uch a combination is a different concept than the overall

appearance of a design which, as indicated, our cases have recognized cannot be a point of

novelty." *Lawman Armor Corp v. Winner Int'l, LLC*, 449 F.3d 1190, 1192 (Fed. Cir. 2006).

STX states that the '083 silhouette's point of novelty is the curvature in the silhouette,

"particularly evident . . . in the transition areas between the widest points of inflection, which

will occur symmetrically on both sides of the design.  These points of inflection are curved such

that they transition the width of the lacrosse head from its widest dimension to its most narrow

over a relatively short distance, thereby giving the lacrosse head its novel keyhole shape."  (Pl.'s

Mem. at Ex. 4, Emala Aff. at ¶ 17.)   In the motions hearing, STX conceded that the point of

novelty could not encompass the top portion of the silhouette because the approximately top-

third of the silhouette was almost identical to Warrior's Evolution lacrosse head, which preceded

the '083 patent.  Warrior argues that it did not infringe the '083 patent's point of novelty because

the curvature in the middle portion of its Evo Pro and Revo Pro lacrosse heads differ

significantly from the '083 silhouette.

As discussed earlier, STX's expert witness, Dr. Magrab, compared the '083 point of

novelty with the Evo Pro and Revo Pro.  Dr. Magrab stated that the optimal way to compare

lacrosse heads for infringement purposes would be to overlay the accused heads against the '083

patent; as part of his expert report, Dr. Magrab plotted the '083 patent against the two accused

Warrior heads.  He concluded:

> The silhouette in the '083 patent is composed of curves whose curvature changes rapidly
> in creating the transition from the head's widest points to its narrowest points.  When

comparing the EvoPro and RevoPro to the '083 patent, as shown in Figures (1) and (2) below . . . we see that each silhouette employs a transition curve that very closely mimics the STX silhouette; that is, a curved line whose curvature is continually and rapidly changing as it progresses from the widest locations to the narrowest locations.

(Def.'s Mem. at Ex. 9, Magrab Aff. at ¶ 9.)  Dr. Magrab also examined previously granted patents and concluded that no previously patented lacrosse head had a shape that was similar to the '083 patent.  (*Id.* at ¶ 10.)

In support of its argument, STX also cites the expert report of Gary Gait.  Gait testified that he had extensive experience in the evolution of lacrosse heads and that the '083 design was correctly referred to as a "radical new keyhole shape."  (Pl.'s Mem. at Ex. 4, Emala Aff. at Ex. R, Gait Rep. at 4.)  He further testified that, in his opinion, "the Warrior Evo Pro and Revo Pro incorporate the novel aspects of the '083 patent, and such novel aspects are not present in the prior art analyzed in the Expert Report of [Dr. Magrab]."  (*Id.*)

Warrior argues that the curvature of its Evo Pro and Revo Pro differs substantially from the '083 patent silhouette.  In particular, Warrior contends that its lacrosse heads feature "gently curving sidewall portions extending from the widest point of the lacrosse head to the ball retention area", whereas the STX silhouette's sidewalls curve more sharply.  Warrior further argues that its heads feature angled sidewalls in the ball retention area, where the patented silhouette features parallel walls in the ball retention area.  Finally, Warrior states that the Evo Pro and Revo Pro are more similar to the Evolution than to STX's Bionic and, thus, could not appropriate the '083's point of novelty.

Despite the testimony of STX's experts, STX has not met its burden of proving no material facts exist as to its patent's point of novelty.  While there is indisputably some similarity

between the curved sidewalls of the '083 silhouette and the Evo Pro and Revo Pro, there exist

enough differences to preclude summary judgment.  In particular, the fact that the Evo Pro and

Revo Pro do not have parallel sidewalls affects the curvature of the lower half of the lacrosse

head.  The Evo Pro and Revo Pro's sidewalls also descend more gradually than does the '083

silhouette beginning at the portion just below the head's scoop.  Warrior's expert, Josh Schmidt,

did a comparison of the Evo Pro, the Revo Pro, and the '083 silhouette.  His figures differ

significantly from Dr. Magrab's.  Schmidt's figures appear to show that the Evo Pro and the

Revo Pro do not have substantial similarity to the '083 patent in the point of novelty.  Which

expert's methods and conclusions are more sound is an issue best left to the ultimate fact-finder

after being developed through testimony.

Further, although the Evo Pro and Revo Pro resemble the '083 silhouette, the figures

attached to the record indicate that the heads also closely resemble Warrior's Evolution.  Dr.

Magrab stated that he examined the Evolution, compared it to the '083 silhouette, and found that

the shapes were not similar.  (Pl.'s Mem. at Ex. 9, Magrab Aff. at ¶ 9.)  He did not, however,

fully explicate the reasons why he found the figures dissimilar.  Given that STX did not disclose

the existence of the Evolution as possible prior art to the patent examiner, it is particularly

important for a fact-finder to evaluate the Evolution's similarity to the '083 silhouette and to the

Evo Pro and Revo Pro.

The Federal Circuit has emphasized that design patents "are entitled to almost no scope

beyond the precise content of the patent drawings." *Brooks Furniture*, 393 F.3d at 1383.  As

illustrated by STX in the lacrosse head evolution chart submitted with its memorandum in

support, lacrosse head designs have changed in very gradual stages over the years.  There are

sufficient issues of material fact in the record regarding the precise curvature of the lacrosse

heads at issue that summary judgment on the point of novelty must be denied.

     A separate order follows.


  August 27, 2007                            /s/               
Date                                        Catherine C. Blake
                                           United States District Judge